UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ballast Advisors, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Scott A. Peterson, Melinda M. Bradley, MMX Wealth Partners, LLC, MMX WP, LLC, Mark Marxer, and MMX Management, LLC,<br><br>Defendants,<br><br>and<br><br>Scott A. Peterson,<br><br>Counter-Plaintiff,<br><br>v.<br><br>Ballast Advisors, LLC and Paul Parnell,<br><br>Counter-Defendants. | Case No. 23-CV-03769-PJS-JFD<br><br>**DEFENDANT/COUNTER-PLAINTIFF SCOTT A. PETERSON AND DEFENDANTS MELINDA M. BRADLEY, MMX WEALTH PARTNERS, LLC, MARK MARXER, AND MMX MANAGEMENT, LLC'S MEMORANDUM IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS


STATEMENT OF FACTS ........ 1

Peterson and Bradley Work for Ballast ........ 1

Ballast Pays Peterson $500 ........ 2

Peterson Later Signs the Agreement ........ 3

Bradley Resigns from Ballast in Early 2022 ........ 7

Peterson Prepares to Leave Ballast ........ 8

Peterson Resigns from Ballast ........ 9

Peterson Retains, But Never Uses, a Ballast Client List ........ 10

Ballast Sends a Deceptive Email to Clients About Peterson ........ 12

Peterson Does Not Solicit Any Ballast Client ........ 13

Ballast Unlawfully Services Clients in Florida ........ 15

ARGUMENT ON BALLAST'S CLAIMS ........ 15

I. LEGAL STANDARD ........ 15

II. THE AGREEMENT IS UNENFORCEABLE ........ 15

A. No Independent Consideration Supported the Covenants ........ 16

1. The $500 Payment Is Inadequate Consideration ........ 16

2. The Death Benefit Is Insufficiently Definite to Provide Consideration ........ 17

3. The Death Benefit Violates the Statute of Frauds ........ 17

4. Peterson's Continued Employment Was Insufficient Consideration ........ 19

B. The Restrictive Covenants Are Overly Broad ........ 19

1. The Agreement's Client Non-Solicit Is Too Broad and Indefinite to Enforce ........ 20

2. The Confidentiality Obligation Is a Never-Ending Non-Solicit ........ 22

3. Ballast Cannot Restrict Peterson Because It Did Nothing to Prevent Bradley's Similar Activities ........ 23

III. PETERSON DID NOT BREACH THE NON-SOLICIT ........ 23

IV. PETERSON DID NOT MISAPPROPRIATE TRADE SECRETS OR VIOLATE ANY KIND OF CONFIDENTIALITY OBLIGATION ........ 24

A. Ballast's Count II for Trade Secret Misappropriation Count Displaces All Its Other Confidentiality-Based Counts ........ 24

B. Ballast Cannot Show MUTSA Misappropriation ........ 25

1. Ballast Did Not Identify Its Trade Secrets with Reasonable Particularity ..... 26
2. Client Lists Are Not Trade Secrets Under Minnesota Law ..... 27

V. PETERSON DID NOT BREACH ANY FIDUCIARY DUTY ..... 27

VI. PETERSON DID NOT TORTIOUSLY INTERFERE WITH ANY BALLAST PROSPECTIVE ECONOMIC ADVANTAGE ..... 28

VII. NO OTHER DEFENDANT AIDED OR ABETTED PETERSON ..... 28

VIII. BALLAST CANNOT PROVE DAMAGES ..... 30

A. Ballast (Through Cobb) Fails to Consider Alternative Causes ..... 31
B. Ballast (Through Cobb) Fails to Apportion Damages ..... 31

IX. BALLAST SHOULD BE BARRED FROM ALL EQUITABLE REMEDIES ..... 33

ARGUMENT ON PETERSON's COUNTERCLAIMS ..... 33

CONCLUSION ..... 35

# TABLE OF AUTHORITIES

**Cases**

*Alpha Tax Servs., Inc. v. Stuart*, 761 P.2d 1073 (Ariz. Ct. App.1988) .......... 26
*B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813 (Minn. 1979) .......... 37
*Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910 (Minn. 2009) .......... 40, 41
*Bennett v. Storz Broad. Co.*, 134 N.W.2d 892 (Minn. 1965) .......... 21
*Bison Advisors LLC v. Kessler*, 2016 WL 4361517 (D. Minn.) .......... 27
*Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640 (Minn. App. 1985) .......... 31
*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035 (8th Cir. 1999) .......... 37
*Bolander v. Bolander*, 703 N.W.2d 529 (Minn. App. 2005) .......... 18
*C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 161 F.4th 1101 (8th Cir. 2025) .......... 21, 23
*CardioVention, Inc. v. Medtronic, Inc.*, 483 F.Supp.2d 830 (D. Minn. 2007) .......... 30
*CHS Inc. v. PetroNet, LLC*, 2011 WL 1885465 (D. Minn.) .......... 30
*Conway v. C.R. Bard, Inc.*, 76 F.Supp.3d 826 (D. Minn. 2015) .......... 16
*Copperhead Agric. Prods., LLC v. KB Ag Corp., LLC*, 2019 WL 7038241 (D.S.D. Dec. 20, 2019) .......... 42
*Drummond Am. LLC v. Share Corp.*, 2010 WL 3167326 (D. Minn.), *R&R adopted*, 2010 WL 3167522 (D. Minn.) .......... 16
*Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890 (Minn. 1983) .......... 29
*Estee Lauder Cos. Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006) .......... 26
*Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561 (E.D. Mich.) .......... 38
*FSI Int'l, Inc. v. Shumway*, 2002 WL 334409 (D. Minn.) .......... 17
*Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc*., 844 N.W.2d 210 (Minn. 2014) 33
*Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc*., 304 F.Supp.3d 815 (D. Minn. 2018) .......... 28, 29
*Gregerson v. Vilana Fin., Inc.*, 2008 WL 451060 (D. Minn.) .......... 42
*Guidant Sales Corp. v. Baer*, 2009 WL 490052 (D. Minn.) .......... 17
*Guy Carpenter & Co. v. John B. Collins & Assocs., Inc.*, 2006 WL 2502232 (D. Minn.) .......... 22
*Hagen v. Burmeister & Assocs.*, 633 N.W.2d 497 (Minn. 2001) .......... 38
*Hartley v. Dillard's, Inc.*, 310 F.3d 1054 (8th Cir. 2002) .......... 36
*Holmes v. Torguson*, 41 F.3d 1251 (8th Cir. 1994) .......... 19
*Honeywell Int'l v. Stacey*, 2013 WL 9851104 (D. Minn.) .......... 24
*Hot Stuff Foods, LLC v. Dornbach*, 726 F.Supp.2d 1038 (D. Minn. 2010) .......... 30
*Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709 (Minn. 1985) .......... 39
*Ikon Office Sols., Inc. v. Dale*, 170 F.Supp.2d 892 (D. Minn.2001), *aff'd*, 22 Fed. App'x 647 (8th Cir. 2001) .......... 16
*ImageTrend, Inc. v. Locality Media, Inc.*, 2022 WL 17128009 (D. Minn.) .......... 31
*Internet Inc. v. Tensar Polytechs., Inc.*, 2005 WL 2453170 (D. Minn.) .......... 30
*JAB, Inc. v. Naegle*, 867 N.W.2d 254 (Minn. App. 2015) .......... 18
*Kallok v. Medtronic, Inc.*, 573 N.W.2d 356 (Minn. 1998) .......... 20
*Katch, LLC v. Sweetser*, 143 F.Supp.3d 854 (D. Minn. 2015) .......... 25, 28
*Kostuch v. General Mills*, 2020 WL 3637922 (Minn. App.) .......... 28
*Krenik v. Cnty. of Le Sueur*, 47 F.3d 953 (8th Cir. 1995) .......... 15
*Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998) .......... 41
*Lasermaster Corp. v. Sentinel Imaging*, 931 F.Supp. 628 (D. Minn. 1996) .......... 31
*Lexis-Nexis v. Beer*, 41 F.Supp.2d. 950 (D. Minn. 1999) .......... 28

*Luigino's, Inc. v. Peterson*, 317 F.3d 909 (8th Cir. 2003) ........ 30
*Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539 (Minn. 2014) ........ 16
*Marco Techs., LLC v. Midkiff*, No. 73-cv-19-6757 ........ 24
*Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823 (Minn. App. 2011) ........ 35
*Mayo Clinic v. Elkin*, 2010 WL 760728 (D. Minn.) ........ 27
*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 2019 WL 7838280 (D. Minn.) ........ 40
*MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005) ........ 39
*Midwest Sign & Screen Printing Supply Co. v. Robert Dalpe & Laird Plastics, Inc.*, 386 F.Supp.3d 1037 (D. Minn. 2019) ........ 22
*Minn. v. Fleet Farm LLC*, 679 F.Supp.3d 825 (D. Minn. 2023) ........ 34
*Moeschler v. Honkamp Krueger Fin. Servs., Inc.*, 2021 4273481 (D. Minn.) ........ 24, 25
*Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736 (Minn. 1982) ........ 20
*Piper Sandler & Co. v. Gonzalez*, 2023 WL 5426000 (D. Minn.) ........ 23
*Prow v. Medtronic, Inc.*, 770 F.2d 117 (8th Cir. 1985)) ........ 20
*Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301 (Minn. App. 1987) ........ 32
*Roth v. Gamble–Skogmo, Inc.*, 532 F.Supp. 1029 (D. Minn. 1982) ........ 21
*Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369 (Minn. 1995) ........ 32
*Sanitary Farm Dairies v. Wolf*, 112 N.W.2d 42 (Minn. 1961) ........ 32
*ScentSational Techs., LLC v. Pepsico, Inc.*, 2018 WL 2465370 (S.D.N.Y.), *aff'd*, 773 F. App'x 607 (Fed. Cir. 2019) ........ 39
*Schaadt v. St. Jude Med. S.C., Inc.*, 2007 WL 2331953 (D. Minn.) ........ 18
*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Cir. 1992) ........ 37
*Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252 (Minn. 1980) ........ 40, 41
*Sunlight Senior Living I LLC v. Sunlight Senior Living Inc.*, No2022 WL 4295384 (Minn. App.) (unpublished) ........ 31
*Surgidev Corp. v. Eye Tech., Inc.*, 648 F.Supp. 661 ........ 25
*Swarthout v. Mutual Serv. Life Ins. Co.*, 632 N.W.2d 741 (Minn. App. 2001) ........ 41
*Taylor v. City of Amboy*, 2016 WL 5417190 (D. Minn.) ........ 39
*Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421 (Minn. App. 1995) ........ 23
*UBS Fin. Servs. v. Christenson*, 2013 WL 2145703 (D. Minn.) ........ 26
*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998) ........ 42
*United Prods. Corp. of Am. v. Cederstrom*, 2006 WL 1529478 (Minn. App.) ........ 21
*Wagner v. Gallup, Inc.*, 989 F.Supp.2d 782 (D. Minn. 2013) ........ 42
*Weinberger v. Maplewood Rev.*, 668 N.W.2d 667 (Minn. 2003) ........ 40
*Weulander v. N. Star Credit Union*, 2024 WL 477165 (D. Minn.) ........ 34
*Witzman v. Lehrman, Lehrman, & Flom*, 601 N.W.2d 179 (Minn. 1999) ........ 35, 38
*Zayed v. Associated Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015) ........ 35

**Statutes**

Minn. Stat. § 513.01 ........ 18
Minn. Stat. § 325C.01 ........ 25

**Other Authorities**

Black's Law Dictionary, "Solicitation" (10th ed. 2014) ........ 21

**Rules**

Fed. R. Civ. P. 56(a) ........ 15
Fed. R. Evid. 702 ........ 36

This is a case about a financial advisor leaving a firm and clients following. Defendants Scott A. Peterson, Melinda M. Bradley, MMX Wealth Partners, LLC, Mark Marxer, and MMX Management, LLC seek summary judgment on all claims asserted by Ballast Advisors, LLC.[1] Peterson also seeks summary judgment as to liability on all his counterclaims against Ballast and Paul Parnell.

## STATEMENT OF FACTS[2]

1. [redacted]

2. [redacted]

3. [redacted]

4. [redacted]

5. [redacted] Parnell 161:9–13.

---

[1] The caption includes MMX WP but no claims are asserted against it.

[2] Deposition transcripts and exhibits are identified by the deponent's name, with the Andersen Declaration exhibit letter in brackets. Each Statement of Fact is "SOF" in the Argument.

6. [redacted] Parnell 161:19–23, Ex. 22[E] §5.

7. [redacted] Parnell 162:7–162:14, Ex. 22[E] §10.

8. Over the following five years, Peterson provided financial services for clients. Peterson did not prepare clients' tax returns. Peterson Decl. ¶2.

9. [redacted] Bradley 47:25–48:5.

10. [redacted] Peterson 62:5–22, 86:3–6; Parnell 239:4–9, 240:24–241:3; Bradley 51:7–15.

11. [redacted] Parnell 148:14–149:17; Parnell 30(b)(6) 329:22–330:12.

12. [redacted] Bradley 202:18–204:1.

13. [redacted] Parnell 153:7–12, 153:22–154:2.

**Ballast Pays Peterson $500**

14. [redacted] Peterson Decl., Ex. 1.

15. [redacted] Peterson 291:3–10; Nease Ex. 17[I] (Nease, stating to another employee who received a similar payment, [redacted]

16. [redacted] Nease 247:12–248:8.

17. Nease described the payment as: [redacted] Nease Ex. 17[I].

18. [redacted] Nease 248:2–7.

**Peterson Later Signs the Agreement**

19. Months later, Peterson signed an Employment Agreement ("Agreement") that includes various restrictive covenants. Parnell Ex. 20[J].

20. [redacted] Marxer 78:8–79:7.

21. [redacted] Marxer 20:6–10, 25:19–22.

22. [redacted] Marxer 80:10–18, 82:20–24, 86:4–13, 92:11–18, 93:3–5.

23. [redacted] Parnell 124:4–16, Ex. 20[J] Recitals D; Nease 40:5–14, 42:9–24.

24. [redacted] Parnell Ex. 20[J] §4.d., Ex. 21[F].

25. [redacted] Peterson 290:6–12; Parnell 140:11–18, 158:10–18; Parnell 30(b)(6) 311:15–22.

26. [redacted] Parnell 156:6–20, 157:11–16, 157:22–158:8, Ex. 21[F], §§4.6(c)(vii), 13.3.

27. [redacted] Parnell 155:2–7, 159:1–10.

28. [redacted] Parnell 139:20–140:4, 155:14–22.

29. Peterson continued his employment at Ballast for about five months after he signed the Agreement. His salary did not increase, and he received no new employment benefits. Peterson Decl. ¶4.

30. The Agreement contains confidentiality obligations. Parnell Ex. 20[J] §6.

31. [redacted]

[redacted] Nease 30(b)(6) 96:3–18, 101:5–102:11, 151:8–11; Parnell 268:13–18; Parnell 30(b)(6) 325:6–14, Ex. 20[J], §§1.6, 6.

32. [redacted] Nease 30(b)(6) 132:16–18, 144:24–145:4; Parnell 268:4–11.

33. [redacted] Nease 30(b)(6) 100:2–5. [redacted] Nease 30(b)(6) 109:20–110:6.

34. [redacted] Nease 30(b)(6) 147:1–6.

35. [redacted] Nease 30(b)(6) 104:24–105:15.

36. [redacted] Nease 30(b)(6) 122:7–123:22, Exs. 2(f), 5[L].

37. [redacted] Nease 30(b)(6) 104:5–14.

38. [redacted] *Cf.* Nease 30(b)(6) 140:24–141:6.

i. [redacted] Parnell 163:14–19, Ex. 23[M] at 3; Nease 30(b)(6) 163:11–20.

ii. [redacted] Parnell 16:17–18,142:8–16, Ex. 20[J], §6.a.

39. [redacted] Nease 30(b)(6) 163:11–20.

40. [redacted] Parnell 16:12–15, 17:3–6, 138:3–9, Ex. 20[J] §1.c.

41. [redacted] Parnell 128:12–22.

42. [redacted] Parnell 143:10–13, 143:24–144:3, 146:5–19; Parnell 30(b)(6) 323:6–9.

43. [redacted]

44. [redacted]

45. [redacted]

46. [redacted]

47. [redacted] Parnell 276:5–15.

**Bradley Resigns from Ballast in Early 2022**

48. [redacted]

49. [redacted]

50. [redacted]

51. [redacted]

52. [redacted]

53. [redacted]

54. [redacted]

55. [redacted]

56. [redacted]

57. [redacted]

58. [redacted]

59. [redacted]

60. [redacted]

[redacted]

61. [redacted]

62. [redacted]

63. [redacted]

64. [redacted]

65. [redacted] Parnell 30(b)(6) 334:2–7, 362:11–13.

66. [redacted] Parnell 237:10–238:6.

67. Ballast accuses Peterson of creating investment portfolios that were not in the clients' best interests, to somehow benefit Peterson. ECF 125 ¶78. [redacted]

68. [redacted] Parnell 264:9–15; Parnell 30(b)(6) 348:20–349:3.

**Peterson Resigns from Ballast**

69. Peterson announced his resignation on February 3, 2023. Peterson Decl. ¶6.

70. After further discussion, Peterson agreed he would stay employed at Ballast for a period to help inform top clients of his planned departure. Peterson Decl. ¶7.

71. [redacted] Peterson 168:9–14, 170:21–25.

72. [redacted] Peterson 191:7–9, 267:24–268:5.

73. [redacted] Peterson 197:13–19.

74. [redacted] Peterson 161:21–163:1. [redacted] Peterson 139:7–140:1

75. [redacted]

Peterson 163:2–19.

76. [redacted] Parnell Ex. 29[Q].

**Peterson Retains, But Never Uses, a Ballast Client List**

77. [redacted] Peterson 212:13–23.

78. [redacted] *See generally* Gorowsky Decl.

79. [redacted] Nease 206:22–25, Ex. 8[R]. [redacted] Parnell 114:10–25.

80. [redacted] Peterson 231:20–22.

81. [redacted] Peterson 225:21–226:15.

82. [redacted] Bradley 190:9–194:14.

83. [redacted] Bradley 202:18–204:1.

84. [redacted] *See generally* Gorowsky Decl.

85. [redacted] Peterson Decl. ¶9.

**Ballast Sends a Deceptive Email to Clients About Peterson**

86. [redacted] Parnell 91:15–92:4, 95:25–96:25, Ex. 10[S]; Peterson Decl. Ex. 2.

87. [redacted] Peterson 175:15–22, 216:14–20. That dispute is irrelevant to this motion.

88. [redacted] Nease 30(b)(6) 201:7–18; Parnell 77:1–9, Ex. 9[T].

89. [redacted] Parnell 86:22–87:9.

90. [redacted] Parnell 109:25–111:12, Ex. 15[U]. [redacted] Parnell 112:14–17.

91. [redacted] Parnell 118:25–119:8.

92. [redacted] Parnell 87:15–88:2.

93. [redacted] Parnell 79:13–5.

94. [redacted] Parnell 83:11–84:3.

95. [redacted] Parnell 84:16–85:1.

96. [redacted] Peterson 219:22–24, Ex. 30[V]; Parnell 88:25–89:23, 103:13–25, 104:1–24, 107:1–5, 109:1–15, 119:21–120:7, 120:24–121:18, Exs. 9, 12–14, 17–18[W].

97. [redacted] Parnell 121:19–22.

98. [redacted] Parnell 116:5–117:13, Ex. 16[X].

99. [redacted] Peterson 187:20–188:2.

**Peterson Does Not Solicit Any Ballast Client**

100. [redacted] Peterson 166:25–167:13.

101. [redacted] Peterson 167:15–168:3.

102. [redacted] Parnell 22:15–19. [redacted] Parnell 90:5–10, 105:8–10, 109:16–21.

103. [redacted] Parnell 105:19–23, 105:25–106:4.

104. [redacted] *See* Peterson Decl. ¶10, Exs. 3–4.

105. Peterson attests he did not solicit any Ballast clients. Peterson Decl. ¶11.

106. [redacted] Parnell 275:6–277:13.

107. [redacted] Parnell 246:11–25, 286:12–287:22, Exs. 24[Y], 29[Q]; Peterson Decl. ¶12.

108. [redacted] Parnell 30(b)(6) 376:12–17.

109. [redacted]

[redacted] *See generally* Gorowsky Decl.

**Ballast Unlawfully Services Clients in Florida**

110. [redacted] Parnell 28:19–29:1, 34:23–35:18, Ex. 5[Z].

111. [redacted] Parnell 30:12–31:4, 35:20–25, Ex. 4[N].

112. [redacted] Parnell 37:18–38:1, 47:5–9, 48:17–22. [redacted] Parnell 40:18–24.

## ARGUMENT ON BALLAST'S CLAIMS

### I. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To avoid summary judgment, a non-moving party must "demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953 (8th Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

### II. THE AGREEMENT IS UNENFORCEABLE

A valid contract is an essential element of a breach of contract claim. *See, e.g., Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). The Agreement is invalid because: (1) it is not supported by adequate consideration; (2) it

violates Minnesota's statute of frauds; and (3) its restrictive covenants are broader than reasonably necessary to protect Ballast's legitimate business interests. Ballast's Count I (and any other Count to the extent it relies on the Agreement) must fail.

### A. No Independent Consideration Supported the Covenants

A restrictive covenant must be supported by consideration. None of Agreement's recited items are sufficient consideration to create an enforceable agreement. (SOF ¶23.)

#### 1. The $500 Payment Is Inadequate Consideration

A past payment is not consideration for a later contract. *Conway v. C.R. Bard, Inc.*, 76 F.Supp.3d 826, 830 (D. Minn. 2015); *see also Drummond Am. LLC v. Share Corp.*, 2010 WL 3167326, at *10 (D. Minn.), *R&R adopted*, 2010 WL 3167522 (D. Minn.); *Ikon Office Sols., Inc. v. Dale*, 170 F.Supp.2d 892, 896 (D. Minn.2001), *aff'd*, 22 Fed. App'x 647 (8th Cir. 2001); *Guidant Sales Corp. v. Baer*, 2009 WL 490052, at *3 (D. Minn.).

Peterson signed the Agreement in September 2022. [redacted] (SOF ¶¶14–19.) The $500 payment does not "constitute a 'real benefit' given in exchange," for the Agreement. *FSI Int'l, Inc. v. Shumway*, 2002 WL 334409, at *5-6 (D. Minn.).

### 2. The Death Benefit Is Insufficiently Definite to Provide Consideration

An indefinite, discretionary "benefit" is not valid consideration. *Id.* at *6. Ballast maintained total discretion over whether Peterson would receive the Death Benefit. Ballast had to make a Death Benefit payment only if there was no "Cause" event, but Section 1.a. defines "Cause" based on Ballast's unilateral subjective interpretation. (SOF ¶24.) This "unfettered discretion in [the employer's] hands does not render the 'promise' to pay [the employee] three-quarters of his average monthly income sufficiently definite to be deemed consideration for the restrictive covenants." *Id.* at *19.

### 3. The Death Benefit Violates the Statute of Frauds

Ballast also cannot show the Agreement's two-year restriction satisfies Minnesota's statute of frauds, Minn. Stat. § 513.01, because the Death Benefit is not sufficiently expressed in writing. *JAB, Inc. v. Naegle*, 867 N.W.2d 254, 256–57 (Minn. App. 2015); *see also Bolander v. Bolander*, 703 N.W.2d 529, 547 (Minn. App. 2005) (statute of frauds test is "simply whether the contract by its terms is capable of full performance within a year"); *Schaadt v. St. Jude Med. S.C., Inc.*, 2007 WL 2331953, at *1–2 (D. Minn.).

The Agreement at Section 4.d. does not explain the Death Benefit; rather, it references a "Sales Price" to be calculated by considering a different contract (the LLC Agreement). Peterson did not receive the LLC Agreement, much less sign it. [redacted]

[redacted][3] (SOF ¶24.)

It is also inappropriate to incorporate the LLC Agreement's terms into the Agreement for purposes of compliance with the statute of frauds. Under Minnesota law, "for several writings to satisfy the statute of frauds collectively, they must refer to one another or be connected by internal evidence so clear that parol evidence is not needed to establish their relationship." *Holmes v. Torguson*, 41 F.3d 1251, 1254 (8th Cir. 1994).

The Agreement mentions the LLC Agreement's Section 4.6, but it does not expressly incorporate Section 4.6 into its integration clause.[4] And even if it did, [redacted]

---

[3] [redacted] (SOF ¶24.)

[4] The Agreement incorporates its own Exhibit A, as did the Non-Compete, so Ballast knew how to attach and incorporate other documents by reference. (SOF ¶¶7, 19.)

[redacted][5] (SOF ¶¶25–28.)

#### 4. Peterson's Continued Employment Was Insufficient Consideration

Peterson continued working at Ballast for about five months after signing the Agreement, but continued employment is insufficient consideration for a mid-stream restrictive covenant, and Peterson received no new benefits after signing. *See Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740-41 (Minn. 1982). (SOF ¶29.)

### B. The Restrictive Covenants Are Overly Broad

Minnesota courts enforce restrictive covenants only if they are reasonable and no broader than necessary to protect the employer's legitimate interests. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361–62 (Minn. 1998). Courts consider whether the restraint is necessary to protect a company's business or goodwill, whether it is broader than necessary to adequately protect those interests, and its duration and geographic scope. *Prow v. Medtronic, Inc.*, 770 F.2d 117, 120 (8th Cir. 1985); *see also Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 899 (Minn. 1965). Legitimate business interests that may warrant protection include a company's goodwill or confidential information. *Roth v. Gamble–Skogmo, Inc.*, 532 F.Supp. 1029, 1031 (D. Minn. 1982).

[5] Before the Agreement, Ballast and Peterson were parties to the Non-Compete. But the LLC Agreement also could not have modified the Non-Compete because it could be modified only by an agreement signed by both Peterson and Ballast. (SOF ¶¶4-6, 25.)

### 1. The Agreement's Client Non-Solicit Is Too Broad and Indefinite to Enforce

The non-solicit suffers many problems.

It includes clients Peterson never serviced or even contacted (so no confidential information or goodwill). Instead, its "Client" definition shows it prohibits Peterson from solicitating every person that had any business relationship with Ballast, even exclusively with another Ballast advisor and/or for [redacted]. (SOF ¶¶8, 40.) Ballast has no legitimate interest in this prohibition. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 161 F.4th 1101, 1107 (8th Cir. 2025); *United Prods. Corp. of Am. v. Cederstrom*, 2006 WL 1529478, at *3 (Minn. App.) (refusing to enjoin defendant when no "close contact with customers sufficient to create goodwill").

It is also ambiguous, which should be held against Ballast. *See Guy Carpenter & Co. v. John B. Collins & Assocs., Inc.*, 2006 WL 2502232, at *4 (D. Minn.). Its "Client" definition includes a confusing list of subparts and sub-subparts. [redacted] (SOF ¶41.) But if that is the case, Ballast has not shown the at-issue clients either negotiated to do business with Ballast or were solicited by Peterson to come to Ballast.

It also prohibits client diversion to any "person or entity that competes" with Ballast, without defining what it means to "compete." Instead, it contains the non-exhaustive "including but not limited to providing the same or similar services or products," without ever explaining what are Ballast's services or products. (SOF ¶¶1, 40.) These omissions

make the restriction unenforceable. *See Midwest Sign & Screen Printing Supply Co. v. Robert Dalpe & Laird Plastics, Inc.*, 386 F.Supp.3d 1037, 1050–51 (D. Minn. 2019).

The non-solicit's territory is also too broad. Its "unlimited geographic scope . . . would essentially bar [Peterson] from practicing within the [financial services] industry at all." *C.H. Robinson*, 161 F.4th at 1107. (SOF ¶40.)

Finally, the non-solicit says Peterson may not "call upon" clients, "divert" clients to do business elsewhere, or "provide or sell" to clients any "service or product" that is the "same as or substantially similar" to those offered or provided by Ballast, its subsidiaries, or its affiliates. There are at least two problems with that.

As an initial matter, this language, [redacted] prohibits far more than "solicitation" (SOF ¶¶40–44), which is the "act or instance of requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." Black's Law Dictionary, "Solicitation" (10th ed. 2014); *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 425 (Minn. App. 1995) (relying on Black's Law Dictionary definition of "solicit"); *see also C.H. Robinson*, 161 F.4th at 1107 (covenant unenforceable because it "went beyond actively soliciting customers"). The prohibition, [redacted] even purports to prevent Peterson from accepting business from unsolicited clients who wish to continue working with Peterson, which Ballast is not permitted to prevent. *See Piper Sandler & Co. v. Gonzalez*, 2023 WL 5426000, at *3 (D. Minn.) ("As the Court has explained previously, 'the great weight of authority' supports the view that solicitation does not occur where a client initiates contact with the defendant."); *Honeywell Int'l v. Stacey*, 2013 WL 9851104, at *8 (D. Minn.). (SOF ¶¶40–47, 106.)

Additionally, Ballast cannot enforce the non-solicit because it created its own violation. Through the "farewell" email Ballast sent (purportedly from Peterson), Peterson reached out to clients after his Ballast employment ended. But according to Ballast, just reaching out to a client, regardless the purpose, is solicitation. (SOF ¶42,)

As to employees, the non-solicit covers every Ballast employee—not those Peterson learned information about or created goodwill with—and prohibits Peterson from persuading a coworker to leave Ballast, even for a non-competitor or for retirement. (SOF ¶40.) That provision does not protect legitimate interests and is therefore unenforceable. *See* Andersen Decl., Ex. AA, *Marco Techs., LLC v. Midkiff*, No. 73-cv-19-6757, Order Granting in Part and Denying in Part Motion for Summary Judgment (Stearns Cty. Dist. Ct. Oct. 28, 2021) (Cashman, J.).

### 2. The Confidentiality Obligation Is a Never-Ending Non-Solicit

The Agreement's confidentiality provision is its own a separate, broader customer non-solicit. The "Confidential Information" definition includes "Client names, lists or other information pertaining to the Company's business." [redacted] (SOF ¶¶30–31.)

If a client's decision to hire Peterson is proof he breached confidentiality, "then, as a practical matter, [Ballast is] converting a confidentiality clause into a perpetual nonsolicitation, nonacceptance, and (partial) noncompete clause." *See Moeschler v. Honkamp Krueger Fin. Servs., Inc.*, 2021 WL 4273481, at *6 (D. Minn.). The confidentiality provision has no temporal limit, and it would be impossible under its terms for Peterson ever to provide services to a former client. *See id.* at *6. (SOF ¶¶30–31, 39.)

[redacted] (SOF ¶38.) That ambiguity must be held against Ballast.

### 3. Ballast Cannot Restrict Peterson Because It Did Nothing to Prevent Bradley's Similar Activities

[redacted] (SOF ¶¶9–13.) Upon Bradley's departure, she could have lawfully solicited and/or serviced every Ballast client. By not protecting itself against Bradley's client solicitation but suing Peterson for it, Ballast did not reasonably protect its interests, waived its protections, and should be equitably estopped from selectively enforcing its covenants. *See Surgidev Corp. v. Eye Tech., Inc.*, 648 F.Supp. 661, 668, 697-98 (D. Minn. 1986), *aff'd*, 828 F.2d 452 (8th Cir. 1987); *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 694 (Minn. App. 1984); *cf. Katch, LLC v. Sweetser*, 143 F.Supp.3d 854, 872 (D. Minn. 2015); *Estee Lauder Cos. Inc. v. Batra*, 430 F.Supp.2d 158, 181-82 (S.D.N.Y. 2006).

## III. PETERSON DID NOT BREACH THE NON-SOLICIT

Ballast's Count I for breach of the non-solicit fails as a matter of fact. Peterson did not solicit any client, [redacted] (SOF ¶¶68, 102–105, 107.) Whatever inferences Ballast thinks it can marshal from circumstantial evidence cannot override the only direct evidence of whether solicitation occurred—Peterson's and the client's sworn testimony.

"[T]here is a difference between soliciting and contacting." *UBS Fin. Servs. v. Christenson*, 2013 WL 2145703, at *5 (D. Minn.). Ballast must show Peterson made affirmative attempts to convince clients to end their relationship with Ballast and follow him. It cannot. "Solicitation requires some element of attempted persuasion." *Benfield, Inc. v. Moline*, 2006 WL 452903, at *6 (D. Minn); *see also Alpha Tax Servs., Inc. v. Stuart*, 761 P.2d 1073, 1075 (Ariz. Ct. App.1988) ("Merely informing customers of one's former employer of a change of employment, without more, is not solicitation.").

Ballast also cannot show Peterson breached the employee non-solicit. [redacted] (SOF ¶¶48–51.)

## IV. PETERSON DID NOT MISAPPROPRIATE TRADE SECRETS OR VIOLATE ANY KIND OF CONFIDENTIALITY OBLIGATION

### A. Ballast's Count II for Trade Secret Misappropriation Count Displaces All Its Other Confidentiality-Based Counts

Ballast pleads several theories of Peterson's purported violation of confidentiality obligations, including Count I for breaching the Agreement's Confidentiality provision, Count II for trade secret misappropriation under MUTSA, Count III for common law misappropriation of confidential information, and Count IV for breach of a fiduciary confidentiality duty. ECF 125 ¶¶91, 94, 95, 105, 106, 108, 109, 113–119, 122.

Under Minnesota law, Ballast's Count II for MUTSA claim displaces a its other claims for confidentiality misconduct when the information underlying the confidentiality claim is not distinct from the information underlying their trade secrets claim. *See Bison*

*Advisors LLC v. Kessler*, 2016 WL 4361517, at *5 (D. Minn.); *Mayo Clinic v. Elkin*, 2010 WL 760728, at *5 n.13 (D. Minn.). (SOF ¶¶33–37.)

Alternatively, each confidentiality-based claim fails for the same reasons the MUTSA claim fails.

**B. Ballast Cannot Show MUTSA Misappropriation**

"Trade secrets laws are meant to be a shield to preserve the trust in confidential relationships, not a sword to be used by employers to retain employees by the threat of rendering them substantially unemployable in the field of their experience." *Katch*, 143 F.Supp.3d at 867. Ballast must prove its information constitutes "trade secrets" that have been "misappropriated." *Lexis-Nexis v. Beer*, 41 F.Supp.2d. 950, 958 (D. Minn. 1999).

A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "derives independent economic value . . . from not being generally known" and "is subject to efforts . . . to maintain its secrecy." Minn. Stat. § 325C.01, subd. 5; *Kostuch v. General Mills*, 2020 WL 3637922, at *7 (Minn. App.). A trade secret is "misappropriated" when improperly acquired, disclosed, or used. Minn. Stat. § 325C.01; *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 304 F.Supp.3d 815, 820 (D. Minn. 2018).

Ballast cannot show any information at issue is a "trade secret," because it cannot prove (1) the information is not generally known or readily ascertainable; (2) the information derives independent economic value from its secrecy; and (3) the plaintiff makes reasonable efforts to maintain secrecy. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 899–901 (Minn. 1983). (SOF ¶79.) Ballast also cannot show

Peterson used any trade secret, because there is no such evidence. *Id.*; *Goodbye Vanilla*, 304 F.Supp.3d at 820-21. (SOF ¶¶77–85.)

As for damages, Ballast has not shown it was harmed by Peterson retaining or disclosing anything, and it has not shown Peterson used any trade secret in a way that harmed Ballast.

### 1. Ballast Did Not Identify Its Trade Secrets with Reasonable Particularity

Ballast fails its basic burden of identifying its trade secrets with reasonable particularity. "Without a proven trade secret there can be no action for misappropriation, even if defendants' actions were wrongful." *Electro-Craft Corp.*, 332 N.W.2d 890, 897 (Minn. 1983). Trade secret claims supported only by labels, category headings, or everything-is-a-secret rhetoric are routinely rejected. *See Luigino's, Inc. v. Peterson*, 317 F.3d 909, 912 (8th Cir. 2003); *Hot Stuff Foods, LLC v. Dornbach,* 726 F.Supp.2d 1038, 1044 (D. Minn. 2010); *CardioVention, Inc. v. Medtronic, Inc.*, 483 F.Supp.2d 830, 833–34 (D. Minn. 2007). [redacted] (SOF ¶36.)

Because Ballast never moved beyond labels and categories, so its trade secret claim fails. *See CHS Inc. v. PetroNet, LLC,* 2011 WL 1885465, at *8 (D. Minn.); *Internet Inc. v. Tensar Polytechs., Inc.*, 2005 WL 2453170, at *6 n.8 (D. Minn.) ("Failure to identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim."). (SOF ¶¶35–38.)

### 2. Client Lists Are Not Trade Secrets Under Minnesota Law

To the extent Ballast claims its client list is a trade secret (SOF ¶¶31–32), it is not. Minnesota courts hold client lists are not trade secrets when names and contact information can be publicly obtained. *See Lasermaster Corp. v. Sentinel Imaging*, 931 F.Supp. 628, 637 (D. Minn. 1996); *Benfield*, 2006 WL 452903, at *7; *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 645 (Minn. App. 1985); *Sunlight Senior Living I LLC v. Sunlight Senior Living Inc.*, 2022 WL 4295384, at *7 (Minn. App.) (unpublished).

Ballast has no evidence to show client identities were highly proprietary or confidential, and its trade secret misappropriation claim fails.

## V. PETERSON DID NOT BREACH ANY FIDUCIARY DUTY

An employee's duty of loyalty prohibits him from soliciting the employer's customers for himself, or from otherwise competing with his employer during employment. *ImageTrend, Inc. v. Locality Media, Inc.*, 2022 WL 17128009, at *6 (D. Minn.); *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. App. 1987). This duty ends when an employee's employment terminates. *Rehab Specialists*, 404 N.W.2d at 304.

[redacted] (SOF ¶¶68–69, 70–76, 85, 101–105, 107.)

Regarding other competing, Peterson was free to prepare to leave Ballast. *SeeRehab. Specialists, Inc.*, 404 N.W.2d at 304; *Sanitary Farm Dairies v. Wolf*, 112 N.W.2d 42, 48 (Minn. 1961) ("[A]n employee may take steps to insure continuity in his livelihood in anticipation of resigning his position" if he does not "feather his own nest at the expense of his employer while he is still on the payroll."). Such freedom is consistent with at-will

employment. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371-72 (Minn. 1995). [redacted][6] (SOF ¶¶55, 65–67.)

## VI. PETERSON DID NOT TORTIOUSLY INTERFERE WITH ANY BALLAST PROSPECTIVE ECONOMIC ADVANTAGE

Ballast's Count V for tortious interference with prospective economic advantage requires Ballast to show, among other things, that Peterson engaged in some independently tortious conduct that caused Ballast damages. *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). Ballast cannot make these showings. Peterson did not breach any aspect of his Agreement, did not misappropriate a trade secret or other confidential information, and did not breach of any fiduciary duty. Ballast also cannot show Peterson's conduct caused it damages. *See supra.* Ballast's Count V should be dismissed.

## VII. NO OTHER DEFENDANT AIDED OR ABETTED PETERSON

To prove its claims in Counts VI and VII for aiding and abetting against the remaining four Defendants (MMX Wealth, MMX Management, Bradley, and Marxer), Ballast must show: (1) Peterson committed a tort that caused Ballast damages, (2) another defendant knew Peterson's conduct was a breach of duty, and (3) the other defendant substantially assisted or encouraged Peterson in achieving the breach. *Weulander v. N. Star Credit Union*, 2024 WL 477165, at *5 (D. Minn.). "Knowledge and substantial assistance"

[6] Ballast also asserts Peterson breached non-specific "fiduciary and other duties" separate from the duty of loyalty claim within Count IV. Peterson reserves the right to seek dismissal of any such additional claim if/when Ballast seeks to support.

are evaluated in tandem, which means that if there is "a minimal showing of substantial assistance there must be a greater showing of scienter." *Minn. v. Fleet Farm LLC*, 679 F.Supp.3d 825, 845 (D. Minn. 2023).

As with the tortious interference claim, this tort fails because Peterson did not breach any duty toward Ballast. *See supra*. This showing is a necessary predicate for an aiding and abetting claim, and without it, Ballast's Counts VI and VII must fail. *Varga v. U.S. Bank. Nat. Ass'n,* 952 F.Supp.2d 850, 856-57 (D. Minn. 2013); *Weulander*, 2024 WL 477165, at *5.

Ballast also cannot prove these claims because Ballast cannot show any defendant had the requisite knowledge. [redacted] (SOF ¶64.)

First, knowledge of a contract is not knowledge of tortious conduct. [redacted] (SOF ¶12.)

Second, [redacted] (SOF ¶83.) And Ballast has not shown any other Defendant was aware of Peterson's provision of the information or of Bradley's receipt of it.

Third, knowledge of breach of contract is not knowledge of tortious conduct. Even if it were, [redacted] (SOF ¶¶52–63.)

Fourth, the claim against Marxer, personally must fail because his mere supervision of Bradley is not enough to impute knowledge of Peterson's alleged misappropriation. *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 831 (Minn. App. 2011) ("high-level supervisor" was not liable for aiding and abetting merely through the supervisor relationship). Even knowledge a tort is being committed and a failure to prevent it is insufficient for aiding and abetting. *Id.*

Finally, Ballast cannot prove any actions by any other Defendant were more than routinely professional. *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 735 (8th Cir. 2015) ("in cases involving professionals, most courts have recognized that 'substantial assistance' means something more than the provision of routine professional services"); *Witzman v. Lehrman, Lehrman, & Flom*, 601 N.W.2d 179, 188–89 (Minn. 1999). Courts insist on proof the assistance "further[s] the [tort] itself, and [does] not merely constitute general aid to the tortfeasor." *Zayed*, 779 F.3d at 735. [redacted][7] (SOF ¶¶20–22, 60.)

## VIII. BALLAST CANNOT PROVE DAMAGES

[redacted] (SOF ¶¶78, 84, 108–109.)

When an "expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury . . . such testimony must be excluded." *Hartley v. Dillard's, Inc.*, 310

[7] It is unclear whether Ballast seeks to hold some or all the other Defendants liable under a vicarious liability theory. If so, Defendants reserve their rights to respond.

F.3d 1054, 1061 (8th Cir. 2002); Fed. R. Evid. 702. Cobb should be excluded for multiple reasons. Consequently, all Ballast's claims against all Defendants fail because Ballast cannot prove damages.

### A. Ballast (Through Cobb) Fails to Consider Alternative Causes

To establish its claimed lost profits damages, Ballast must prove "(a) profits were lost, (b) the loss was directly caused by [Defendants' alleged wrongful conduct], and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 816 (Minn. 1979).

Establishing causation, even assuming liability, requires considering and making proper adjustments for other factors that may have alternatively caused the alleged losses. *See Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir. 1999); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992). [redacted] (SOF ¶108-109 (at Gorowsky Decl. ¶¶21-37).)

[redacted] Without Cobb's opinion, Ballast cannot prove damages, so its claims fail.

### B. Ballast (Through Cobb) Fails to Apportion Damages

[redacted]

[redacted] (SOF ¶108-109 (at Gorowsky Decl. ¶¶9-20).) But liability will exist, if at all, for specific Defendants on specific claims.

Collective liability is not a foregone conclusion. Ballast must show joint and several liability by proving two or more defendants actively participated in any manner in the commission of a tort, or procured, commanded, directed, advised, encouraged, aided, or abetted its commission, or ratified it after it is done. *Witzman*, 601 N.W.2d 179, 185-86 (Minn. 1999). It must show MMX Wealth and MMX Management are liable for the conduct of its employees by proving that conduct was foreseeable, related to, and connected with acts otherwise within work-related limits of time and place. *Hagen v. Burmeister & Assocs.*, 633 N.W.2d 497, 504 (Minn. 2001). If the jury does not find that Peterson engaged in all types of wrongdoing (e.g., soliciting clients and accepting clients and using Ballast's secrets), or that all Defendants engaged in all the wrongdoing on all the claims as to all the clients, then Cobb's opinions are worthless because [redacted]

[redacted] This failure warrants exclusion. *See, e.g.*, *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *11-13 (E.D. Mich.); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005); *ScentSational Techs., LLC v. Pepsico, Inc.*, 2018 WL 2465370, at *9–10 (S.D.N.Y.), *aff'd*, 773 F. App'x 607 (Fed. Cir. 2019).

Cobb's report shows Ballast cannot satisfy its damages requirements, so all its claims must fail.

## IX. BALLAST SHOULD BE BARRED FROM ALL EQUITABLE REMEDIES

"[H]e who seeks equity must do equity, and he who comes into equity must come with clean hands." *See Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 715 (Minn. 1985). Unclean hands denies equitable relief to a plaintiff "who engaged in his own reprehensible conduct." *Taylor v. City of Amboy*, 2016 WL 5417190, at *3 (D. Minn.).

[redacted] (SOF ¶¶110–112.) The Court should therefore bar Ballast from seeking any form of equitable relief in this action.

## <u>ARGUMENT ON PETERSON'S COUNTERCLAIMS</u>

Peterson also seeks summary judgment, only as to liability, on his counterclaims against Ballast and Parnell.

First, Ballast and Parnell are liable for defamation, defamation *per se*, and malicious injury. [redacted] *See Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009); *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). It was an unprivileged, false attribution that satisfies publication, falsity, and fault. *See Weinberger v. Maplewood Rev.*, 668 N.W.2d 667, 673 (Minn. 2003). (SOF ¶¶2–3, 86–100.) It also meets the requirements for malicious injury, which remedies

malicious false statements calculated to injure a business. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 2019 WL 7838280, at *7 (D. Minn.). And because the defamatory statements in the farewell email [redacted], it is defamation *per se* and actionable without proof of actual damages. *Bahr*, 766 N.W.2d at 920; *Stuempges*, 297 N.W.2d at 255.

Second, Ballast and Parnell are liable for intrusion upon seclusion, which occurs when a defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998). The tort requires: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mutual Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. App. 2001). The farewell email intruded upon Peterson's expectation [redacted] (SOF ¶¶2–3, 86–100.)

Third, Ballast and Parnell are liable for appropriation, which protects an individual's identity and is committed when one knowingly "appropriates to his own use or benefit the name or likeness of another." *Lake*, 582 N.W.2d at 233. A common form of appropriation occurs when a plaintiff's name or likeness is used for a commercial purpose, such as to advertise the defendant's business or product. *Wagner v. Gallup, Inc.*, 989 F.Supp.2d 782, 791 (D. Minn. 2013); *Gregerson v. Vilana Fin., Inc.*, 2008 WL 451060, at *10–11 (D. Minn.). [redacted] (SOF ¶¶2–3, 86–100.)

Fourth, Ballast and Parnell are liable for false endorsement under Section 43(a)(1)(A) of the Lanham Act. The farewell email was [redacted] *Copperhead Agric. Prods., LLC v. KB Ag Corp., LLC*, 2019 WL 7038241, at *9 (D.S.D. Dec. 20, 2019); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). (SOF ¶¶2–3, 86–100.)

## **CONCLUSION**

For the reasons set forth above, the Court should grant summary judgment in the Defendants' favor and dismiss all of Ballast's claims against them, and conclude liability against Ballast on each of Peterson's counterclaims.

NILAN JOHNSON LEWIS PA

Dated: February 24, 2026

By: *s/ Joel Andersen*

Joel Andersen (#0352573)
Katie M. Connolly (#0338357)
Christopher T. Ruska (#0401745)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Telephone: (612) 305-7500
Fax: (612) 305-7501
jandersen@nilanjohnson.com
kconnolly@nilanjohnson.com
cruska@nilanjohnson.com

ATTORNEYS FOR DEFENDANT/ COUNTER-PLAINTIFF SCOTT A. PETERSON AND DEFENDANTS MELINDA M. BRADLEY, MMX WEALTH PARTNERS, LLC, MMX WP, LLC, MARK MARXER, AND MMX MANAGEMENT, LLC