**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Ballast Advisors, LLC, | Case No. 23-CV-3769 (PJS/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS** |
| Scott A. Peterson, Melinda M. Bradley, MMX Wealth Partners, LLC, MMX WP, LLC, MMX Management, LLC, and Mark Marxer, | |
| Defendants, | |
| and | |
| Scott A. Peterson, | |
| Counter-Plaintiff, | |
| v. | |
| Ballast Advisors, LLC and Paul Parnell, | |
| Counter-Defendants. | |

This matter is before the Court on Plaintiff Ballast Advisors, LLC's ("Ballast") Motion to Sanction Defendant Scott A. Peterson under Fed. R. Civ. P. 37(e) for failing to preserve relevant electronically stored information ("ESI") (Dkt. No. 148). The Court heard oral argument on the Motion on March 13, 2026. Matthew T. Boos appeared for the Plaintiff, while Joel Andersen and Christopher T. Ruska appeared for the Defendants. (Hr'g Mins., Dkt. No. 197 (listing all appearances of counsel).) After hearing oral argument and studying the parties' briefs, the Court recommends granting the motion in part but, because

1

some issues require the resolution of questions of fact, and those factual questions concern the conduct of the trial, deferring resolution of those factual questions to the district court judge.

## I.   <u>Background</u>

According to Plaintiff's Complaint, Ballast is a national financial services firm based in Minnesota. (Third Am. Compl. ¶ 1, Dkt. No. 125.) Ballast Advisors brought this action against former employees Scott Peterson and Melinda Bradley, as well as against MMX WP, LLC (Mr. Peterson's current employer) and MMX Wealth Partners, LLC (Ms. Bradley's current employer). (*Id.* at ¶¶ 2–7.) Generally, Ballast alleges that Mr. Peterson violated his non-solicitation agreement after his employment ended and solicited Ballast's clients in his new role with other named defendants. (*Id.* at ¶¶ 91–95, 123–24.)

### A.  Relevant Pre-Litigation Conduct

Though the facts underlying this motion are in dispute, the legal issue is a simple one. Ballast alleges that Mr. Peterson intentionally left his phone on auto-delete even after he had a duty to retain evidence in anticipation of litigation. (*See* Pl.'s Mem. in Supp. 19–20, 22, Dkt. No. 150.) It also alleges that Mr. Peterson manually deleted potentially discoverable emails from relevant time periods. (*Id.* at 12–13, 22.) Mr. Peterson admits that the auto-delete function on his accounts was left on and that some emails and text messages from relevant time periods were deleted from his phone. (*See* Defs.' Mem. in Opp. 1–2, 8, Dkt. No. 179.)  He argues that this was, at worst, negligent destruction of evidence and should not warrant sanctions. (*See id.*)

The following facts are undisputed. Mr. Peterson began working for Ballast as an investment advisor in 2017. (*Id.* at ¶ 18.) At that time, he signed an employment agreement that included a non-compete provision. (*Id.* at ¶ 22.) This agreement was updated in September 2022 and included a non-solicitation provision that lasted two years beyond the end of Mr. Peterson's employment. (*Id.* at ¶¶ 30, 34–35.) That provision states:

> Non solicitation. Employee agrees that, during the Restricted Period, Employee will not, directly or indirectly:
> a. Call upon, solicit, or attempt to solicit or divert any Client to do business with any Competing Business, or provide or sell to any Client any service or product that competes with, or is the same or substantially similar to, any service or product offered or provided by the Company, its subsidiaries or affiliates during Employee's employment with Company or its subsidiaries or affiliates.

(*Id.* at ¶ 34.)

By November 9, 2022, while still working for Ballast, both Mr. Peterson and Ms. Bradley signed agreements with Advisory Services Network, a competing investment firm. (*Id.* at ¶ 53, 68.) "[Mr.] Peterson [then] took a paid leave of absence from Ballast beginning in December 2022 and continuing until sometime in January 2023." (Dec. 11, 2024 Order 3, Dkt. No. 46.) On December 2, 2022, Mr. Peterson formed MMX WP in Florida. (Third Am. Compl. ¶ 52, Dkt. No. 125.) Around that time, Mr. Peterson emailed at least two clients telling them to call his personal phone number, a practice Ballast characterizes as unusual and discouraged within Ballast. (*Id.* at ¶ 71–72.) On February 3, 2023, Mr. Peterson submitted a letter of resignation to Ballast, (*id.* at ¶ 42), and his last day of employment was around February 23, 2023. (Dkt. No. 125 at ¶ 49; *see also* Third Am. Compl. Ex. D, Dkt. No. 125-4 (cease-and-desist letter); *but see* Defs.' Answer to Third

3

Am. Compl. ¶ 49, Dkt. No. 129 (denying the specific end dates of Mr. Peterson's employment).) On February 23, 2023, when Ballast learned that Mr. Peterson helped form MMX on December 2, 2022, Ballast sent Mr. Peterson a cease-and-desist letter. (Dkt. No. 125 at ¶ 52, 55; *see also* Dkt. No. 129 at ¶ 52.) In that letter, Ballast informed Mr. Peterson that it believed he was soliciting his former Ballast clients and notified him of his duty to retain any records pertaining to the dispute, including:

> [E]lectronic files and other data generated by and/or *stored on a computer, smart phone, cell phone. . .* that might in anyway relate [to] your work with Ballast. This means that [Mr. Peterson] *may not alter or delete in any way –* any documents, electronic data, tangible items or evidence, *including but not limited to any and all e-mail communication*, that relates in any way to this matter.

(Third Am. Compl. Ex. D, Dkt. No. 125-4 (emphasis added).)

## B. Procedural History

Ballast filed this motion for Rule 37(e) Sanctions against Mr. Peterson, alleging that he "delet[ed] . . . hundreds of text messages and numerous emails with direct relevance to this case." (Pl.'s Mot. for Sanctions 1, Dkt. No. 148.) Ballast alleges that Mr. Peterson failed to disable a text message auto-delete function on his phone and that text messages from 2022 and 2023 were destroyed or lost. (Defs.' Mem. in Opp. 1–2, 3, Dkt. No. 179; *see also* Peterson Dep. 31:14–32:15, Dkt. No. 183-1.) The fact that these deletions occurred is undisputed, but Mr. Peterson claims that his personal e-mail had an auto-delete setting turned on "long before this litigation became a possibility," and thus emails from that time period were also lost. (Defs.' Mem. in Opp. 8, Dkt. No. 179.)

4

Mr. Peterson and his counsel attempted to ameliorate the information loss by obtaining copies of text messages from relevant parties, but some of them also had auto-delete functions activated or otherwise could not produce responsive messages. (*Id.* at 6.) Of the texts and emails known to exist, Mr. Peterson has failed to produce 139 text messages sent to Ballast clients between December 15, 2022, and October 24, 2023, and 8 emails sent between April 2022, and February 8, 2023. (*See* Pl.'s Mem. in Supp. 6–7, Dkt. No. 150; Defs.' Mem. in Opp. 8–10, Dkt. No. 179.)

The parties have been before the Court on issues related to these messages before. (*See* Order on Mot. to Compel 9–10, Dkt. No. 108.) Six months ago, in a previous order, the Court granted Ballast's motion to compel with respect to:

> 1. All non-privileged emails (including attachments) *to, from, or including* the email accounts listed in Defendants' post-hearing letter for all of 2022 and 2023, regardless of content or recipients;
>
> 2. All non-privileged emails (including attachments) between Mr. Peterson and Ms. Bradley for all of 2022 and 2023 *to, from, or including* the email accounts listed in Defendants' post-hearing letter, regardless of content, and including third parties;
>
> 3. All text messages between Mr. Peterson and Ms. Bradley from 2022 and 2023, regardless of content *and whether they include third parties*;
>
> . . .
>
> 6. Mr. Peterson's 2022 cell phone records.

(*Id.* at 9.)

Ballast had already raised concerns then about spoliation because, in response to some requests, some defendants claimed to have "produced all responsive" discovery. (*Id.*; Ballast's Oct. 8, 2025 Letter, Dkt. No. 104.) Many of the text messages produced at that

5

point were not from Mr. Peterson's phone. (Order on Mot. to Compel 9, Dkt. No. 108.)

The Court reminded Defendants then of the "severe consequences of intentional spoliation

of evidence," and "of their obligations to preserve discoverable [ESI] and to retrieve such

information from other sources, if the originals have been destroyed." (*Id.* at 9–10 (citing

*Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019).)

## II.    Legal Standards

### A.    Spoliation Generally

Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve that evidence, which deprives another of the opportunity to use it as evidence in

pending or reasonably foreseeable litigation. *Peterson v. Washington Cnty.*, No. 18-CV-

2640 (DWF/ECW), 2021 WL 2686119, at *3 (D. Minn. June 30, 2021) (quoting *Nicollet

Cattle Co., Inc. v. United Food Grp., LLC*, Civ. No. 08-5899, 2010 WL 3546784, at *4 (D.

Minn. Sept. 7, 2010)). "The duty to preserve evidence is triggered when a party knows or

should have known that the evidence is relevant to current or future litigation." *Id.* The

"duty to preserve relevant evidence must be viewed from the perspective of the party with

control of the evidence." *Great Am. Ins. Co.*, 2025 WL 1754485, at *3 (quoting *Paisley

Park*, 330 F.R.D. at 232).

Federal Rule of Civil Procedure 37 governs spoliation of electronically stored

information ("ESI"). Rule 37(e) provides:

> If electronically stored information that should have been preserved in the
> anticipation or conduct of litigation is lost because a party failed to take
> reasonable steps to preserve it, and it cannot be restored or replaced through
> additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

Under Rule 37(e), a court may sanction a party for failing to take reasonable steps to preserve ESI "provided that the lost ESI cannot be restored or replaced through additional discovery." *Paisley Park,* 330 F.R.D. at 232. "The rule does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment.

Rule 37(e) provides for two degrees of sanctions for its violation. Which one is used depends on the spoliator's intent. Under Rule 37(e)(1), which merely requires a showing of prejudice to the moving party, courts may only award sanctions that are "necessary to cure the prejudice." But under Rule 37(e)(2), if the Court finds that the party "acted with the intent to deprive another party of the information's use in the litigation," it may order more severe sanctions, including sanctions that may functionally end the case.

### B. Intent under Fed. R. Civ. P. 37(e)(2)

"The Eighth Circuit has explained that Rule 37(e)(2) requires 'a finding' of 'intent to deprive.'" *N. Am. Sci. Assocs., LLC v. Conforti*, No. 24-CV-287 (JWB/ECW), 2024 WL 4903753, at *16 (D. Minn. Nov. 27, 2024) (quoting *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)). If a party intentionally hides or destroys relevant evidence, it cannot

be discovered, and the loss prejudices the other party, "then the Court may order more severe sanctions, including . . . an instruction to the jury that it may or must presume the missing [messages] w[ere] unfavorable." *Paisley Park*, 330 F.R.D. at 236 (quoting Fed. R. Civ. P. 37(e)(2)). "[D]eciding a case based on hypothesized evidence is strong medicine," and therefore "Federal Rule of Civil Procedure 37(e)(2)(A) expressly states that an adverse presumption requires a finding that . . . one party acted with the intent to deprive another party of the [ESI's] use in the litigation." *Id.*

"[A] party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that [the] party purposefully destroyed evidence to avoid its litigation obligations." *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 1464830, at *11 (E.D. Wash. May 9, 2022) (citation omitted). The intent to deprive can be proven indirectly and does not require a metaphorical "smoking gun." *See Auer*, 896 F.3d at 858. "Intent rarely is proved by direct evidence, and a [fact-finder] has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *NuVasive, Inc. v. Kormanis*, No. 1:18-CV-282 (CCE/LPA), 2019 WL 1171486, at *12 (M.D.N.C. Mar. 13, 2019), *R. & R. adopted*, 2019 WL 1418145 (M.D.N.C. Mar. 29, 2019) (quoting *Paisley Park*, 330 F.R.D. at 236) (cleaned up)).

In cases where there is a clear question of fact as to a spoliator's intent under Rule 37(e)(2), the Court may "conclude that the intent finding should be made by a jury, in which case the Court's instruction should make clear that the jury may infer from the loss of the []messages that they were unfavorable to Defendant[] only if the jury first finds that

8

[the spoliator] acted with the intent to deprive Plaintiff of their use in the litigation." *See NuVasive, Inc.*, 2019 WL 1171486, at \*12; Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2) (cleaned up). Such "credibility analys[es] and related finding[s] as to a litigant's mental state," constitute "prototypical functions of a jury and questions that a jury … may fairly evaluate and resolve." *Id*. (cleaned up) (quoting *Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-CV-228 (JED/MGG), 2018 WL 4539818, at \*11 (N.D. Ind. Sept. 20, 2018)).

### III.   <u>Discussion</u>

Before addressing the parties' arguments, the Court briefly addresses the burden of locating the missing messages. Mr. Peterson seems to insinuate that locating the missing messages is Ballast's job.  (*See* Defs.' Mem. in Opp.  7, Dkt. No. 179 ("Ballast Does Not Seek to Obtain Text Messages from Other Sources").) However, Mr. Peterson cannot place the burden of curing his discovery deficiency, which was caused (whether intentionally or not) by his actions, on Ballast. Even though Mr. Peterson's personal copies of his text messages are likely destroyed, he cannot escape his responsibility to find replacement copies. As this Court reminded the parties in its October 21, 2025 order, "parties [have an] obligation[] to preserve discoverable Electronically Stored Information and *to retrieve such information from other sources, if the originals have been destroyed*." (Order on Mot. to Compel 10, Dkt. No. 108 (cleaned up) (emphasis added).)

### A. **Mr. Peterson's Duty to Preserve Information did not Arise in Early 2022.**

"A court's first task when determining whether sanctions are appropriate is to determine when the alleged spoliating party's duty to preserve documents commenced."

*Great Am. Ins. Co.*, 2025 WL 1754485, at *4 (citing *Evenson v. Johnson Bros. Liquor Co.*, No. 18-CV-3188 (JRT/LIB), 2020 WL 12948541, at *5 (D. Minn. Nov. 12, 2020)). "The duty to preserve evidence is triggered when the party knows or should have known that the evidence is relevant to current or future litigation." *Id.* at *4; *see also Paisley Park*, 330 F.3d at 232. "The duty to preserve evidence extends to those persons likely to have relevant information—the key players in the case . . .." *Great Am. Ins. Co.*, 2025 WL 1754485, at *4. The "duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence." *Id.* (citing *Rao v. St. Jude Med. S.C., Inc.*, 631 F. Supp. 3d 678, 711 (D. Minn. 2022).

Whether sanctions under Rule 37(e) are appropriate at all depends on when Mr. Peterson's duty to retain information began. Mr. Peterson argues that his duty to retain should begin only on February 23, 2023, when he was sent the cease-and-desist letter. (Defs.' Mem. in Opp. 14, Dkt. No. 179 .) Plaintiffs argue the obligation should begin as early as April 2022. (Pl.'s Mem. in Supp. 17–18, Dkt. No. 150.) In fact, there are six possible dates that could serve as the trigger point for Mr. Peterson's duty to retain relevant

10

evidence: April 2022,[1] June 2022,[2] October 12, 2022,[3] September 29, 2022,[4] December 2, 2022,[5] and February 23, 2023.[6]

---

[1] *See* Pl.'s Mem. in Supp. 17–18, Dkt. No. 150 ("Peterson's behavior indicates that he anticipated litigation . . . before February 23, 2023. In April and May 2022, Peterson sought the advice of Defendant Marxer when trying to interpret Ballast's employment agreement and non-compete agreement. (*See* Dkt. 120-1.) Marxer advised Peterson to seek legal counsel at that time. (Boos Ex. W, 74:7–9.).").

[2] *Id.* at 18 ("[I]n June 2022, Peterson communicated with a third-party wealth advisory firm that he was considering joining, and in that communication, Peterson discussed contacting a lawyer that had been referred to him and also sought assistance 'understand[ing] the specifics and any nuisances for [Ballast] clients being brought over from [his] current role at [Ballast].' (Ex. P.).").

[3] *Id.* ("[O]n October 12, 2022, Peterson represented to [his eventual employer after leaving Ballast] that he had consulted legal counsel with respect to non-solicitation matters in his employment agreement. (Ex. A.).").

[4] *See id.* at 18–19 (citing *N. Am. Sci. Assocs.*, 2024 WL 4903753, at *19) ("Defendants asserted work-product privilege for a September 29, 2022 communication . . . .. (*See* Boos Decl. Ex. X; Dkt. 125 ¶ 30.) 'Courts have concluded that the duty to preserve attaches on the date a party begins asserting work product protection.'"). *But see* Defs.' Mem. in Opp. 5, Dkt. No. 179 ("The amended version of Defendants' joint privilege log shows the earliest privilege assertion as February 23, 2023. (Andersen Decl., Ex. C.) . . . Defendants produced to Ballast such . . . communications (including the September 29, 2022, calendar invitation). (Andersen Decl., Ex. D.).").

[5] *See* Third Am. Compl. ¶¶ 52–54, Dkt. No. 125 ("Peterson formed MMX WP on December 2, 2022, approximately ten weeks before resigning from Ballast . . . .. Peterson's investment advisory business competes with Ballast, in violation of Peterson's Employment Agreement.").

[6] *See* Pl.'s Mem. in Supp. 17, Dkt. No. 150 ("It is not reasonably in question that Peterson had a duty to preserve all relevant ESI at least as early as February 23, 2023, after he received Ballast's cease-and-desist letter."); *see also* Defs.' Mem. in Opp. 14, Dkt. No. 179 ("February 23, 2023, was the objective trigger: the date when Ballast sent Peterson a cease-and-desist letter . . ..").

Ballast argues that Mr. Peterson's obligation to retain began in April 2022, when he sought advice from another Defendant—Mark Marxer, with whom he later started the competing investment firm—on his draft employment agreement, which included the non-solicitation clause at issue in this case. (*See* Pl.'s Mem. in Supp. 18, Dkt. No. 150; *see also* Boos Decl. Ex. W 74:7–9, Dkt. No. 152-16.) Mr. Marxer recommended that Mr. Peterson seek an attorney's advice on the provisions. (Pl.'s Mem. in Supp. 18, Dkt. No. 150.) Other trigger dates posited by Plaintiff in the summer and fall of 2022 also relate to Mr. Peterson contacting counsel about employment issues. The Court will not equate an employee's decision to seek legal advice with the employee "anticipating litigation." Not only employees, but people in all sorts of situations seek legal advice. Homebuyers ask real estate lawyers to review closing documents, companies ask lawyers to review contracts with their suppliers, and employees considering a job change ask lawyers to review non-compete agreements. Even within the category of employees, individuals seek legal advice on contracts for different reasons—they may want guidance before accepting a new offer, or wish to understand how their contract is changing, or what new terms mean. That does not mean they are anticipating litigation. If anything, a person could be seeking legal advice to ensure that they are, or will be able to be, in compliance with the terms of an employment contract going forward and thereby avoid litigation. Accordingly, the Court rejects April, May, and June 2022 as trigger dates.

Ballast then argues that Mr. Peterson's obligation should have begun on September 29, 2022, when, in an earlier version of his privilege log, Mr. Peterson first asserted a work product privilege. (Pl.'s Mem. in Supp. 18, Dkt. No. 150.) Some courts have found that the

duty to preserve attaches on the date that a party begins asserting work product privileges. *See N. Am. Sci. Assocs., LLC*, 2024 WL 4903753, at \*19 (citing *Escamilla v. SMS Holdings Corp.*, No. 09-CV-2120 (ADM/JSM), 2011 WL 13243580, at \*37 (D. Minn. June 28, 2011), *aff'd*, 2011 WL 5025254 (D. Minn. Oct. 21, 2011)). However, the Defendants have since amended their privilege log, and the earliest date that they assert privilege is December 2, 2022. (*See* Anderson Decl. Ex. C, Dkt. No. 182-1.) The document that was labeled privileged in September was a calendar invitation that did not include Mr. Peterson. (Defs.' Mem. in Opp. 5, Dkt. No. 179.) The Court also rejects the September 2022 trigger date.

**B. Mr. Peterson was Obliged to Retain Information as of December 2, 2022.**

The Court finds that Mr. Peterson's obligation to retain information began on December 2, 2022, when Mr. Peterson formed MMX Wealth Partners (MMX WP). Given the language of his contract's non-solicitation provision (*see* Third Am. Compl. ¶ 34, Dkt. No. 125), and regardless of its legality under Minnesota law, forming a competing investment company while employed at Ballast created a high risk of litigation. Mr. Peterson helped form MMX WP weeks before resigning his position at Ballast, and while still having access to confidential client information. A reasonable person should understand that openly competing under those circumstances will likely lead to litigation. From that point on, Mr. Peterson should have taken steps to preserve information that might be relevant to a potential lawsuit over violations of his employment contract.

Of the 139 known text messages between Mr. Peterson and former Ballast clients identified by Ballast, all of them were sent after December 2, 2022. (*See* Pl.'s Mem. in

13

Supp. 6–7, Dkt. No. 150.) Many of the texts were exchanged even after Mr. Peterson's asserted trigger date, February 23, 2023. (*See* Defs.' Mem. in Opp. 14, Dkt. No. 179.) Turning from text messages to emails, of the eight total emails Ballast identified as not being produced, three are alleged to have been exchanged after December 2, 2022, and Defendants state they have found and produced two of those three. (*See* Defs.' Mem. in Opp. 8–9, Dkt. No. 179.)

### C. Mr. Peterson Failed to Take Reasonable Steps to Preserve ESI.

Even when litigation is reasonably foreseeable, a party is under no obligation "to keep every shred of paper, every e-mail or electronic document and every backup tape." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Lit.*, 299 F.R.D. 502, 517–18 (S.D.W. Va. 2014) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating the scope of information that should be preserved often is uncertain). The "duty to preserve evidence extends to those [persons] likely to have relevant information—the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Ethicon*, 299 F.R.D. at 517 (citation and internal quotation marks omitted).

### i. Mr. Peterson's Text Messages.

Mr. Peterson admits that he enabled a 30-day automatic deletion setting for his text messages "years ago and to save phone space."[7] (Defs.' Mem. in Opp. 1, Dkt. No. 179; *see*

---

[7] At some point during this litigation, Peterson and his counsel represented to this Court that Peterson and Bradley turned automatic deletion settings on and off. (*See* Defs.' Nov. 24, 2025 Mem. 3, Dkt. No. 116.) They have later recanted this statement, and all say that the setting has been on continuously for years. Regardless of whether that is true or whether

*also* Peterson Dep. 31:14–32:15, Dkt. No. 183-1.) "[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI." *Pable v. Chicago Transit Auth.*, No. 19-CV-7868 (RWG/HKM), 2024 WL 3688708, at *7 (N.D. Ill. Aug. 7, 2024), *aff'd*, 145 F.4th 712 (7th Cir. 2025). "It takes, at most, only a few minutes to disengage the auto-delete function on a cell phone." *Paisley Park*, 330 F.R.D. at 233. It is also not uncommon for litigants to begin backing up their phone to external storage or make a full copy of the phone once they anticipate litigation.

There can be no reasonable dispute as to the relevance of Mr. Peterson's text messages and his duty to retain them once he started a competing investment firm. Mr. Peterson admits that he often texted clients from his personal phone. (Defs.' Mem. in Opp. 2, Dkt. No. 179.) Regardless of whether the texts were personal or business-related, they were nonetheless sent and received from his clients at Ballast, and he should have known that the texts might have been relevant in the event his former employer sued him after leaving for a competing firm. It is not persuasive that the texts were *passively* deleted. When litigation was reasonably foreseeable, Mr. Peterson had an obligation to preserve the texts. He did not.

---

Defendants chose their words poorly, all of the known texts identified should have been retained. Any question of whether Peterson knowingly turned this setting on and off would pertain to the question of his intent, which is irrelevant for a finding of sanctions under R. 37(e)(1) but is the dispositive issue in determining whether and to what extent the deletions occurred with the intent to deprive parties of their use in litigation, warranting sanctions under Fed. R. Civ. P. 37(e)(2).

ii.        Mr. Peterson's E-mails

Mr. Peterson alleges that his personal Gmail account also had an activated auto-delete setting, though he does not state any parameters about the function (how long emails were kept before being deleted, how long ago the auto-delete function was activated, etc.). (Defs.' Mem. in Opp. 8, Dkt. No. 179.) Personal Gmail accounts, however, do not have an "auto-delete function."[8]  Any deletion of Gmail would be manual and therefore volitional. The same would be true if Mr. Peterson had turned on a filter to delete old messages. And, again, if this were done merely to "save storage space," Mr. Peterson could have purchased more space, deleted information not directly relevant to this case, or taken other action to preserve the emails. He took no such action.

D.   **The information cannot be restored or replaced by additional discovery.**

"Having concluded that [Defendant] did not take reasonable steps to preserve . . . relevant ESI [resulting in its loss contrary to his duty of preservation], the Court must next consider whether the lost ESI can be restored or replaced from any other source." *NuVasive, Inc.*, 2019 WL 1171486, at *9 (quoting *Paisley Park*, 330 F.R.D. at 235). It is not disputed that the information Ballast seeks is lost and cannot be restored. Both parties have made

---

[8] *See* Pl. Mem. in Supp. 24, n. 11–12, Dkt. No. 150 (citing Google Workspace Admin Help, *Manage     email     storage     with     auto     delete     settings*, https://support.google.com/a/answer/151128?hl=en (last visited Apr. 21, 2026)). Mr. Peterson seems to acknowledge this in his brief and argues alternatively that the trash is auto-deleted after 30 days. (Defs.' Mem. in Opp. 17–18, Dkt. No. 179 ("But even if Gmail lacks a global retention rule, Gmail does automatically purge Trash after 30 days.").) But that would still require Peterson to manually send the subject emails to the Trash folder, which Gmail would then automatically delete 30 days later. Therefore, the reasonability analysis is unaffected by the distinction.

numerous attempts to collect the information from other sources like third parties, clients, and technology experts without success. (*See* Pl.'s Mem. in Supp. 5, 9–10, Dkt. No. 150; *see also* Defs.' Mem. in Opp. 2, 6, Dkt. No. 179.) Now that almost four years have passed since the time these messages were sent, there is apparently nothing that can be done to recover this information.

### E.    Ballast is Prejudiced as a Result.

Ballast was certainly prejudiced by the loss of Mr. Peterson's emails. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Paisley Park*, 330 F.R.D. at 236 (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)). "An evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the [lost ESI's] importance in the litigation." Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(1). Ballast alleges that Mr. Peterson breached his employment contract by soliciting their clients when he moved to a competing investment firm. (*See, e.g.*, Third Am. Compl. ¶¶ 91–95, Dkt. No. 125.) The messages at issue here were exchanged between Mr. Peterson and 24 of Ballast's former clients, around the time that Mr. Peterson started a competing firm and following the end of his employment at Ballast. (Pl.'s Mem. in Supp. 6–7, 11–15, Dkt. No. 150.) Some were sent in the month preceding his last day in office. (*Id.* at 14.)

In the circumstances of this case,  prejudice is self-evident. *See Paisley Park*, 330 F.R.D. at 236; *see also Multifeeder Tech., Inc. v. British Confectionary Co. Ltd*, No. 09-cv-1090 (JRT/TNL), 2012 WL 4128385, *23 (D. Minn. Apr. 26, 2012) (finding prejudice because Court will never know what ESI was destroyed and because it was undisputed that

17

destroying parties had access to relevant information), *rev'd on other grounds*, No. 09-cv-1090, 2012 WL 4135848; *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 110 (S.D. Fla. 1987).

In defense, Mr. Peterson offers hypothetical reasons as to why these documents could be innocuous and asks the Court to take him and his clients, who he currently services and with some of whom he formed personal relationships, at their word on the contents of these lost messages. (*See* Defs.' Mem. in Opp. 2, Dkt. No. 179.) Rule 37(e) exists so that parties and courts need not take spoliators at their word when information that should have been preserved is destroyed. Given the nature of this litigation, the recipients of the messages, and the time during which they were exchanged, Ballast is prejudiced from the loss of this information and sanctions under 37(e)(1) are warranted. The Court finds that an appropriate sanction is requiring Mr. Peterson to pay Plaintiff's costs and attorneys' fees for bringing this motion and the earlier Motion to Compel. Whether this monetary sanction alone is sufficient to cure the prejudice caused by the loss of the texts and emails depends on whether Mr. Peterson deleted those texts and emails with the intent to deprive Plaintiffs of their use in this litigation. It is to that question that the Court now turns.

### F.    Intent to Deprive

More severe sanctions under Rule 37(e)(2) require a finding that the spoliator acted with the intent to deprive the opposing party of the use of the information in litigation. *See NuVasive, Inc.*, 2019 WL 1171486, at *12; *see also* Fed. R. Civ. P. 37(e)(2). "Intent rarely is proved by direct evidence, and a [fact-finder] has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the

18

witnesses in a particular case, and other factors. There need not be a 'smoking gun' to prove intent [under Rule 37(e)(2)]." *NuVasive, Inc.*, 2019 WL 1171486, at *12 (quoting *Paisley Park*, 330 F.R.D. at 236 (cleaned up)). Further, such a "credibility analysis and [related] finding[s] as to [a litigant's] mental state," constitute "prototypical functions of a jury and questions that [a] jury ... [may] fairly evaluate and resolve." *Id.* Consistent with that understanding, the commentary to Rule 37(e)(2) explicitly contemplates that the Court may "conclude that the intent finding should be made by a jury, [in which case] the [C]ourt's instruction should make clear that the jury may infer . . . that [the lost messages were] unfavorable to [Defendant] only if the jury first finds that [he] acted with the intent to deprive [Plaintiff] of th[eir] use in the litigation." *Id.* (citing Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2)).

These are factual questions, and the evidence does not clearly support or reject a finding of intent under Rule 37(e)(2). Ballast alleges that Mr. Peterson's failure to disable auto-delete for his text messages, including after he was warned to retain such information in the cease-and-desist letter, shows he acted with intent to deprive plaintiff of the use of his messages in this litigation. (*See* Pl.'s Mem. in Supp. 22, Dkt. No. 150.) Ballast also alleges that Mr. Peterson selectively deleted his emails, warranting the more severe sanctions available under Rule 37(e)(2). (*Id.* at 23.) Ballast has offered emails that *could* show intent but could also be innocuous. (*See* Boos Decl. Ex. P, Dkt. No. 152-9.)  The Defendants have supplied affidavits from some of the subject clients to support their contention that Mr. Peterson's deletions were not intended to deprive plaintiffs of their use. (*See, e.g.*, Defs.' Mem. in Opp. 2, Dkt. No. 179).

19

Like the court in *NuVasive*, the Court sees merit in reserving the issue of intent (and necessarily the appropriateness of sanctions under Rule 37(e)(2)) for the jury, the body best equipped to determine the credibility of the relevant witnesses and weigh the facts relevant to the question. *See generally NuVasive*, 2019 WL 1171486; *see also* Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2)). As that court did, the Court recommends submitting the question of intent to deprive to the jury. *See id*.

## CONCLUSION

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Ballast Advisors, LLC's Motion for Sanctions under Rule 37(e)(1) (Dkt. No. 148) be **GRANTED**;

2. Defendants be sanctioned appropriately for their violation of Rule 37(e)(1) by being required to pay Plaintiff's costs and attorneys' fees related to bringing this motion and the earlier Motion to Compel. Plaintiffs will submit an accounting to the Court and to Mr. Peterson's counsel on or before May 15, 2026; and

3. Plaintiff Ballast Advisors, LLC's Motion for Sanctions under Rule 37(e)(2) (Dkt. No. 148) be **DEFERRED** until trial and submitted to the jury.

Date: May 1, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).